IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROBERTA CLARK,**    Plaintiff,   v.   **PLANNED PARENTHOOD SOUTHEAST, INC; PLANNED PARENTHOOD OF GEORGIA, INC.; PLANNED PARENTHOOD OF ALABAMA; DR. AQUA DON E. UMOREN, MD.;  PYHSICIANS LABORATORY SERVICE, INC AND DR. MICHAEL B ROHFING, MD; and FICTITIOUS DEFENDANTS A-I,**    Defendants. | **Case No.: 2:14-cv-01939-SLB**   **ORAL ARGUMENT REQUESTED** |

### DEFENDANT MICHAEL B. ROHLFING, M.D.'S MOTION TO DISMISS AND INCORPORATED BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 12(b), Defendant Michael B. Rohlfing, M.D. (incorrectly identified in the caption of the Plaintiff's Amended Complaint as "Dr. Michael B. Rohfing MD"), hereby moves this Court to dismiss Plaintiff's Amended Complaint in its entirety against Dr. Rohlfing. In support of his motion, Dr. Rohlfing shows the Court as follows:

[020178-00001/829073/1]

- 1 –

# I. INTRODUCTION

## A. Factual Allegations

This is a medical malpractice action in which the Plaintiff, Roberta Clark, accuses multiple defendants of negligence in connection with medical care and treatment provided to Ms. Clark in August and September, 2010. [See Ex. "A", Original Complaint; Ex. "B", Second Amended Complaint.] Specifically, the Plaintiff alleges that Defendants Planned Parenthood Southeast ("PPS") and Dr. Aqua Don E. Umoren ("Dr. Umoren") were negligent in medical care provided on August 20, 2010, leading to the alleged failed termination of the Plaintiff's pregnancy via a dilation and curettage ("D&C") procedure performed by Dr. Umoren. [See Ex. "A", Original Complaint.]

A tissue sample was obtained during the August 20, 2010, D&C procedure and it allegedly was sent to Dr. Michael Rohlfing and Physicians Laboratory Service, Inc. ("PLS") on September 2, 2010. [See Ex. "B", Second Amended Complaint, ¶ 25.] Dr. Rohlfing is a pathologist, and he analyzed the tissue sample obtained from the D&C procedure. Dr. Rohlfing then issued a "Surgical Pathology Report" on September 3, 2010, which described the results of his analysis of the

tissue sample. [Id., ¶¶ 28-29.][1] In the report, Dr. Rohlfing stated: "No fetal tissue is identified grossly." [Id., ¶ 28.] The Surgical Pathology Report was sent by Dr. Rohlfing to PPS. The report was received by PPS on September 17, 2010, and was made a part of the PPS records. [Id., ¶ 26.] The Plaintiff's claims against Dr. Rohlfing arise entirely from his interpretation and analysis of the tissue sample on September 2, 2010.

B. **Procedural History**

On August 9, 2012, the Plaintiff filed a medical malpractice action—identifiable as *Clark v. Planned Parenthood of Georgia, Inc., et al.*, Case Number CV2012-01045—in the Circuit Court of Jefferson County, Alabama (the "Civil Action"), alleging that the defendants were negligent in certain medical care and treatment they provided to Ms. Clark. [See Ex. "A", Original Complaint.] The defendants originally named in the Civil Action were Planned Parenthood of Georgia, Inc., Planned Parenthood of Alabama, Dr. Umoren, and unnamed fictitious defendants. [See id.] In her original Complaint, the Plaintiff alleged:

> Upon information and belief, plaintiff alleges that following said suction curettage procedure Dr. Umoren knew or should have known that suction curettage procedure did not result in termination of plaintiff's pregnancy and that plaintiff was still pregnant after the procedure because ***no fetal tissue was identified in tissue specimen sent to pathology*** on August 20, 2010.

---

[1] For the Court's convenience, a copy of the Surgical Pathology Report issued by Dr. Rohlfing is attached as Exhibit "C".

[020178-00001/829073/1]
- 3 –

[See id. ¶ 14; (emphasis added).]

Five months later, on January 21, 2013, the Plaintiff amended her original Complaint to substitute Planned Parenthood Southeast ("PPS") as the proper corporate party, replacing Planned Parenthood of Georgia, Inc. and Planned Parenthood of Alabama. [See Ex. "D" First Amended Complaint.] The fictitious defendants remained unidentified, and Dr. Rohlfing was not named in the First Amended Complaint. Following the filing of the First Amended Complaint, the named defendants in the Civil Action were PPS, Dr. Umoren, and unidentified fictitious defendants. [See id.]

On September 2, 2014, more than four years after the medical care at issue and more than two years after the original Complaint was filed, the Plaintiff filed a Second Amended Complaint naming Dr. Rohlfing and PLS as defendants. [See Ex. "B", Second Amended Complaint.]² In the Second Amended Complaint, the Plaintiff purported to substitute Dr. Rohlfing and PLS for "fictitious parties DEF." [Id., ¶ 2.] Fictitious parties "DEF" were described in the original Complaint as follows:

---

² The Plaintiff's Amended Complaint adding Dr. Rohlfing and PLS as defendants is entitled simply "Plaintiff's Amended Complaint." However, it will be referred to herein for clarity's sake as the "Second Amended Complaint," given that a separate amended complaint previously was filed by the Plaintiff on January 21, 2013.

[020178-00001/829073/1]
- 4 –

> Defendants, DEF, refer to that person, firm, corporation, administrator/nursing practitioner, governing authority, board of directors, clinic director, medical director, attending physician, supervising physician, medical specialist, technician, nursing assistant, sonographers, ultrasound technicians or any other agents of named defendants negligently and/or wantonly failed to train, failed to supervise and who negligently and/or wantonly hired the person or persons, entity or entities whose failure to utilize that degree of a medical care, knowledge, skill, competence, care, treatment, assistance and supervision required in rendering medical treatment to the plaintiff;

[See Ex. "A".] The amended Civil Action subsequently was removed to this Court by the defendants on October 10, 2014.

The Plaintiff alleges in the Second Amended Complaint that Dr. Rohlfing was negligent on September 2, 2010, in his interpretation and analysis of the tissue sample from the D&C procedure. [See Ex. "B", ¶¶ 52-54.] Notably, although the statement in the original Complaint that "no fetal tissue was identified in [the] tissue specimen sent to pathology" (Ex. "A", ¶ 14) makes it clear that the Plaintiff had reviewed the Surgical Pathology Report by the time the *original* Complaint was filed, the Plaintiff alleges in the Second Amended Complaint that she received a copy of the Surgical Pathology Report "on or about March 5, 2013." [See Ex. "B", ¶ 26.]

## II.    ARGUMENT AND CITATION OF AUTHORITY

The Plaintiff claims that Dr. Rohlfing's alleged negligent conduct occurred on September 2, 2010. [See Ex. "B", ¶¶ 52-57.] Thus, the two-year statute of

[020178-00001/829073/1]

- 5 –

limitation applicable to her claims against Dr. Rohlfing expired on September 2, 2012. See Ala. Code § 6-5-482(a). The Second Amended Complaint, however, was not filed until September 2, 2014, two years after the expiration of the statute of limitation. To avoid the bar of the statute of limitation, the Plaintiff must establish that her claims against Dr. Rohlfing "relate back" to the date the original Complaint was filed. See ALA. R. CIV. P. 9(h) and 15(c)(4). According to controlling Alabama law, however, the relation-back doctrine does not apply in this case. Thus, the Plaintiff's claims against Dr. Rohlfing are barred by the statute of limitation and must be dismissed.

A.  **Fictitious Party Practice Under Alabama Law.**

Rules 9(h) and 15(c)(4) of the Alabama Rules of Civil Procedure "allow a plaintiff to avoid the bar of a statute of limitation by fictitiously naming defendants for which actual parties can later be substituted." Ex parte Chemical Lime of Alabama, Inc., 916 So.2d 594, 597 (Ala. 2005) (citations omitted). Rule 9(h) provides:

> When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituted the true name.

Ala. R. Civ. P. 9(h). The Alabama Supreme Court explained that the purpose of Rule 9(h) is not to toll the statute of limitation to allow plaintiffs more time to

[020178-00001/829073/1]
- 6 –

formulate a *cause of action,* but to extend the time in *emergency* situations where the plaintiff knows he has been injured and has a cause of action against some person or company but cannot determine, through due diligence, that party's name. See Columbia Engineering Intl, Ltd. v. Espey, 429 So.2d 955, 958-59 (Ala. 1983).

Rule 15(c)(4) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h), Ala. R. Civ. P."  In order for the relation-back doctrine to apply and justify the substitution of a defendant for a fictitiously named party after the limitations period has run, the plaintiff seeking such substitution must establish: (1) that she stated a cause of action against the defendant in the body of the original complaint, albeit identifying the party only as a fictitiously named party; (2) that she was ignorant of the defendant's identity at the time the original complaint was filed; (3) that she exercised due diligence to identify the fictitiously named party; and (4) that she promptly amended her complaint once she knew the identity of the fictitiously named party. Patterson v. Consolidated Aluminum Corp., 101 So.3d 743, 746-747 (Ala. 2012).  Plaintiff cannot satisfy *any* of these requirements.

**B.    The Relation-Back Doctrine Does Not Apply, And The Plaintiff's Claims Against Dr. Rohlfing Are Barred By The Applicable Statute Of Limitation.**

### 1. The Plaintiff failed to properly state a cause of action against the fictitious defendants identified in the original Complaint.

The first requirement imposed by Rule 9(h) and the relation-back principles of Rule 15(c) is that "the plaintiff must state a cause of action against the fictitiously named party in the body of the original complaint." Patterson, 101 So.3d at 746-747. This rule arises from Alabama Code § 6-5-551, which provides:

> "[t]he plaintiff shall include in the complaint. . . a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. . . . Any complaint which fails to include detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief can be granted."

Ala. Code § 6-5-551 (1975).

Applying this rule, the Supreme Court of Alabama held in Mikkelsen v. Salama, 619 So. 2d 1382, 1384 (Ala. 1993) that in order to comply with Code § 6-5-551, a plaintiff must give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm. As the rule relates to fictitious defendants, "[m]erely naming the fictitious party in the style and/or body of the complaint is insufficient; the complaint must describe the actions that form the basis of the cause of action against the fictitiously named defendant." Hood v. Liberty Ins. Corp., 2013WL3894958 *2 (S.D. Ala. 2013) (*quoting* International Refining and

Manufacturing Co. v. Irmco, 972 So.2d 784, 789 (Ala. 2007)). In other words, to state a cause of action against a fictitious defendant, the complaint must contain allegations specifying what the fictitious defendant allegedly did wrong. Columbia Engineering Intl, Ltd. v. Espey, 429 So.2d 955, 958-59 (Ala. 1983).

Here, the Plaintiff's attempt to name fictitious defendants in her original Complaint is woefully inadequate and falls far short of the specificity required by Alabama law. In the caption of the original Complaint, the Plaintiff refers to numerous types of healthcare providers and other individuals and generally refers to broad categories of conduct that allegedly harmed the Plaintiff. Notably absent, however, is any specific statement as to who the fictitious defendants might be or what they specifically did wrong. Additionally, in Count Three of the original Complaint, the Plaintiff attempts to set forth the basis for her claims against the fictitious parties. Again, however, there are no *specific* allegations at all regarding what the fictitious parties allegedly did wrong. [See Ex. "A", ¶¶ 31-33.]

The Plaintiff's vague, generalized approach to fictitious-party pleading has been specifically rejected by multiple courts, including the Northern District of Alabama. In Texidor v Winn Dixie Stores, Inc., 2014WL2434473 *2 (N.D. Ala. 2014), for example, the Court stated:

> [N]o claim or cause of action was ever stated against the individuals at any time before the statute of limitations ran. It can be argued that this interpretation of the Rules of Civil Procedure is a technical one, but it

is not an unreasonable one. Although the rules do establish a system of notice pleading, they do not eliminate the necessity of alleging a theory of liability against a defendant before the limitation period runs, *and merely listing a multitude of fictitious parties does not meet that requirement.* It is not unreasonable to require the statement of a claim to be contained in the complaint itself.

Texidor v Winn Dixie Stores, Inc., 2014WL2434473 *2 (N.D. Ala. 2014) *(quoting* Minton v. Whisenant, 402 So.2d 971, 972–73 (Ala. 1981) (emphasis added)).

The Texidor and Minton decisions make it clear that something more than vague generalizations is required to support fictitious-party pleading. Here, the Plaintiff failed to specify any cause of action against the fictitious parties named in the original Complaint, precluding application of relation-back principles to the Second Amended Complaint.

### 2. The Plaintiff was not "ignorant" of Dr. Rohlfing's identity when the original Complaint was filed.

The second essential requirement for relation-back principles to apply is that the plaintiff is "ignorant" of the identity of the fictitious party at the time the original Complaint is filed. Under Alabama law, a plaintiff is considered ignorant of the identity of a fictitiously named defendant when, "after exercising due diligence to ascertain the identity of the party intended to be sued, he lacks knowledge at the time of the filing of the complaint of facts indicating to him that the substituted party was the party intended to be sued." Ex parte Hensel Phelps Constr. Co., 7 So. 3d 999, 1002-03 (Ala. 2008).

Here, the Plaintiff's Second Amended Complaint does not relate back to the filing date of the original Complaint because the plaintiff was aware of Dr. Rohlfing's identity at the time the original Complaint was filed. It is apparent from the content of the original Complaint that the Plaintiff has been fully aware of Dr. Rohlfing's identity, and his specific role in the Plaintiff's medical care, since before August 9, 2012—the date the original Complaint was filed. In her original Complaint, the Plaintiff specifically alleged that:

> Upon information and belief, Plaintiff alleges that following said suction curettage procedure Dr. Umoren knew or should have known that suction curettage procedure did not result in termination of plaintiff's pregnancy and that plaintiff was still pregnant after the procedure because ***no fetal tissue was identified in tissue specimen sent to pathology*** on August 20, 2010.

[See Ex. "A", Original Complaint, ¶ 14; (emphasis added).] This statement in the original Complaint confirms that, at the time the original Complaint was filed, the Plaintiff knew the results of Dr. Rohlfing's analysis of the tissue sample taken during the D&C procedure. The Plaintiff could only have obtained this information from one source—the Surgical Pathology Report completed and signed by Dr. Rohlfing on September 3, 2010. In fact, the highlighted language above is nearly verbatim from the Gross Description section of the Surgical Pathology Report, which states: "No fetal tissue is identified grossly." [See Ex. "C".] The language in paragraph 14 of the original Complaint strongly implies that the Plaintiff has been

in possession of a copy of the Surgical Pathology Report and aware of Dr. Rohlfing's identity since at least August 9, 2012. As a result, relation-back principles may not be applied to the Second Amended Complaint.

### 3. Alternatively, the Plaintiff failed to exercise due diligence to ascertain Dr. Rohlfing's identity.

Even if the Plaintiff was unaware of Dr. Rohlfing's identity when she filed her original Complaint, she was required to exercise due diligence to learn his identity. It is well established under Alabama law that to invoke the relation-back principle of Rule 15(c), a plaintiff, after filing suit, must proceed in *a reasonably diligent manner* to determine the true identity of a fictitiously named defendant and to amend his complaint accordingly. As the Supreme Court of Alabama explained:

> Rule 9(h) is not intended to give plaintiffs additional time beyond the statutorily prescribed period within which to formulate causes of action. Instead, the principal reason for the rule is to toll the statute of limitations in emergency cases where plaintiff knows he has been injured and has a cause of action against some person or entity, but has been unable to ascertain through due diligence the name of that responsible person or entity.

Ex parte Nationwide Ins. Co., 991 So.2d 1287, 1292 (Ala. 2008).

Here, even if the Plaintiff did not know Dr. Rohlfing's identity at the time the original Complaint was filed (which Defendant disputes), her claims are still time barred because she failed to exercise due diligence to identify Dr. Rohlfing in a timely manner. The allegations in the original and amended Complaints establish

two important, undisputed facts: (1) the Plaintiff had possession of the Plaintiff's medical records from PPS before the original Complaint was filed, and (2) the records from PPS included the Surgical Pathology Report completed and signed by Dr. Rohlfing. For example, in paragraphs 11-15 of the original Complaint, the Plaintiff discusses in detail the contents of the medical records maintained by PPS, including specific descriptions of "paper work," test results, ultrasound results, and Dr. Umoren's "preoperative and operative procedure summary." [Ex. "A", ¶¶ 11-15.] This specific information could not have been obtained from any source other than the medical records maintained by PPS. Likewise, in the Second Amended Complaint, the Plaintiff concedes that the records maintained by PPS included the Surgical Pathology Report and that the report was "received" by PPS no later than September 16, 2010. Together, these allegations confirm that the Plaintiff had possession of the PPS records, including the Surgical Pathology Report, long before the statute of limitation expired. As a result, the Plaintiff easily could have identified Dr. Rohlfing and added him as a party if she had exercised even the slightest diligence and carefully reviewed the medical records in her possession.

The decision of the Alabama Supreme Court in <u>Marsh v. Wenzel</u>, 732 So.2d 985 (Ala. 1998) involved virtually identical facts to this case, and it controls the issue before this Court. In <u>Marsh</u>, the plaintiff brought a medical malpractice action against a surgeon for failing to remove a cancerous mass. After the

expiration of the statute of limitation and statute of repose, the plaintiff amended her complaint to add a pathologist and a pathology laboratory as new defendants. The plaintiff argued that she did not know the identity of the pathology defendants before the statutes of limitation and repose expired. Alternatively, she argued that even if she was aware (or should have been aware) of the identities of the pathology defendants, she was not aware of her cause of action against them until after expiration of the statutes of limitation and repose. The Alabama Supreme Court rejected both arguments, stating:

> [The plaintiff] knew the identity of the pathologist before the expiration of the four-year period in which an action for medical malpractice must be commenced. Although she was ignorant of his identity when she commenced her action by suing [the original defendant], [the pathologist's] name was included on her medical records. [The plaintiff] cannot reasonably be deemed to have been ignorant of matters clearly set forth in the records.

Marsh, 732 So.2d at 988. See also Ex parte Ismail, 78 So.3d 399 (Ala. 2011) (holding that plaintiff did not exercise due diligence where plaintiffs obtained medical records which identified the defendant physician before filing their original complaint); Weber v. Freeman, 3 So.3d 825 (Ala. 2008) (plaintiff's claims barred by the statute of limitation because plaintiff knew of the new defendants' existence and their role in decedent's care, and it was plaintiff's responsibility to investigate and evaluate her claim before the statute ran to determine who was responsible for decedent's death); Bowen v. Cummings, 517 So.2d 617 (Ala.

1987); Ex parte Snow, 764 So.2d 531 (Ala. 1999); Ex parte Klemawesch, 549 So.2d 62 (Ala. 1989) (finding that the plaintiff's claims did not relate back to the original complaint because plaintiff had been on notice of an unidentified signature below a progress note contained within the medical records obtained from the hospital prior to commencing the action).

The rule from Marsh, and the numerous additional authorities cited above, must be applied here. At a minimum, the Plaintiff was not "reasonably diligent" in identifying Dr. Rohlfing as the physician who signed the Pathology Report; in fact, it appears that she made no effort at all for more than four years to determine his identity. To be sure, the "reasonable diligence" requirement under Rule 9(h) does not absolve such an infirm investigation from the operation of the statute of limitations, for "[t]he diligent plaintiff who is truly ignorant of the defendant's identity at the time of filing the original complaint is not penalized. The recalcitrant plaintiff cannot, however, use [Rule 9(h)] to gain what might otherwise amount to an open-ended statute of limitations." Crowl v. Kayo Oil Co., 848 So. 2d 930, 938-39 (Ala. 2002) (citations omitted). Thus, given the Plaintiff's complete failure to exercise due diligence, her Second Amended Complaint does not relate back and must be dismissed.

### 4. The Plaintiff did not promptly amend her Complaint once she learned Dr. Rohlfing's identity.

The final essential requirement for the relation-back doctrine to apply is that the plaintiff must promptly amend the original complaint once the identity of a fictitious party is obtained. Patterson, 101 So.3d at 747; Sherrin v. Bose, 608 So.2d 364, 366 (Ala. 1992). For example, in Sherrin, the Alabama Supreme Court refused to apply the relation-back doctrine where the plaintiff "waited almost 10 months before amending the complaint" after determining the fictitious defendant's true identity. Sherrin, 608 So.2d at 366.

Here, the Plaintiff concedes that she became aware of Dr. Rohlfing's identity "on or about March 5, 2013" when she received medical records during discovery from the original defendants. [See Ex. "B", ¶ 26.] Yet, inexplicably, the Plaintiff waited nearly 18 months before amending her Complaint to add Dr. Rohlfing as a party. Under these circumstances, the due diligence requirement is not conceivably satisfied and relation-back principles do not apply. The Plaintiff's Second Amended Complaint therefore is barred by the statute of limitation and must be dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendant Michael B. Rohlfing, M.D. respectfully requests that his Motion to Dismiss be granted.

Respectfully submitted this 17th day of October, 2014.

/s/ LaBella S. Alvis
LaBella S. Alvis  (ASB-0755-A39L)
R. Jordan Wood (ASB-2151-R69W)

Counsel for Defendant Michael B. Rohlfing, M.D.

**OF COUNSEL**:

CHRISTIAN & SMALL LLP
505 North 20th Street
Suite 1800
Birmingham, Alabama  35203
Telephone: (205) 795-6588
Facsimile: (205) 328-7234
lsa@csattorneys.com
rjw@csattorneys.com

[020178-00001/829073/1]
- 17 –

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case, and/or I hereby certify that I have mailed the foregoing by United States Postal Service on this the 17th day of October, 2014, to the following:

Adedapo T. Agboola
Darryl Bender
BENDER AND AGBOOLA, LLC
711 North 18th Street
Birmingham, Alabama 35203
Ph: (205) 322-2500
Fax: (205) 324-2120
agbula@aol.com

Charles A. "Chip" McCallum, III
Eric Hoaglund
McCallum, Hoaglund, Cook & Irby, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama  35216
Phone:  (205)824-7767
Fax:  (205)824-7768
cmccallum@mhcilaw.com
ehoaglund@mhcilaw.com

                                                */s/ LaBella S. Alvis*
                                                OF COUNSEL